**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| ERIC SABATINI, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Case No. _____ ) |
| v. | ) JURY TRIAL DEMANDED ) |
| AMPLIFY ENERGY CORP., DAVID M. DUNN, CHRISTOPHER W. HAMM, SCOTT L. HOFFMAN, EVAN S. LEDERMAN, KENNETH MARIANI, DAVID H. PROMAN, and EDWARD A. SCOGGINS, JR., | ) CLASS ACTION ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on May 6, 2019 (the "Proposed Transaction"), pursuant to which Amplify Energy Corp. ("Amplify" or the "Company") will be acquired by Midstates Petroleum Company, Inc. ("Parent") and Midstates Holdings, Inc. ("Merger Sub," and together with Parent, "Midstates").

2. On May 5, 2019, Amplify's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Midstates. Pursuant to the terms of the Merger Agreement, Amplify stockholders will receive 0.933 shares of Parent common stock for each share of Amplify common stock they own.

3. On June 26, 2019, defendants filed a proxy statement/prospectus (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Amplify common stock.

9. Defendant Amplify is a Delaware corporation and maintains its principal executive offices at 500 Dallas Street, Suite 1700, Houston, Texas 77002. Amplify's common stock is traded on the OTCQX under the ticker symbol "AMPY."

10. Defendant David M. Dunn is a director of the Company.

11. Defendant Christopher W. Hamm is a director of the Company.

12. Defendant Scott L. Hoffman is a director of the Company.

13. Defendant Evan S. Lederman is a director of the Company.

14. Defendant Kenneth Mariani is President, Chief Executive Officer, and a director of the Company.

15. Defendant David H. Proman is Chairman of the Board of the Company.

16. Defendant Edward A. Scoggins, Jr. is a director of the Company.

17. The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

18. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Amplify (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

19. This action is properly maintainable as a class action.

20. The Class is so numerous that joinder of all members is impracticable. As of May 3, 2019, there were approximately 22,212,290 shares of Amplify common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

21. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

22. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other

members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

23. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

24. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

25. Amplify is an independent oil and natural gas company engaged in the acquisition, development, exploration, and production of oil and natural gas properties.

26. The Company's operations are focused in the Rockies, offshore California, East Texas, North Louisiana, and South Texas.

27. On May 5, 2019, Amplify's Board caused the Company to enter into the Merger Agreement with Midstates.

28. Pursuant to the terms of the Merger Agreement, Amplify stockholders will receive 0.933 shares of Parent common stock for each share of Amplify common stock they own.

29. According to the press release announcing the Proposed Transaction:

Amplify Energy Corp. (OTCQX: AMPY) ("Amplify") and Midstates Petroleum Company, Inc. (NYSE: MPO) ("Midstates") announced today that they have

entered into a definitive merger agreement pursuant to which Amplify will merge with a subsidiary of Midstates in an all-stock merger-of-equals. Under the terms of the merger agreement, Amplify stockholders will receive 0.933 shares of newly issued Midstates common stock for each Amplify share of common stock. The merger is expected to close in the third quarter of 2019, at which time Amplify and Midstates stockholders will each own 50% of the outstanding shares of the combined company.

The combined company will be headquartered in Houston and trade on the NYSE under the ticker AMPY. Amplify's President and Chief Executive Officer Ken Mariani will lead the combined company. The new Board of Directors will include members who currently serve on the Amplify and Midstates Boards. A detailed presentation describing the rationale and merits of the merger can be found at www.amplifyenergy.com or www.midstatespetroleum.com. . . .

Transaction Details

The merger agreement was unanimously approved by the participating directors of both boards. The Midstates Board of Directors has recommended that the Midstates stockholders vote their shares in favor of the issuance of Midstates common stock to Amplify stockholders in connection with the merger and the Amplify Board of Directors has recommended that the Amplify stockholders vote their shares in favor of the merger.

The transaction is subject to the terms and conditions set forth in the merger agreement, including holders of a majority of Midstates stock present at the special meeting having voted in favor of the stock issuance, holders of a majority of Amplify stock having voted in favor of the merger, the waiting period under the U.S. Hart-Scott-Rodino Act having expired or been terminated early, the Midstates stock being issued to Amplify stockholders in connection with the merger being listed on the NYSE and other customary conditions. Amplify sought, and has received, a technical consent from the lenders in its existing credit facility permitting the consummation of the merger.

Amplify's financial advisor is UBS Investment Bank and its legal advisor is Kirkland & Ellis LLP. Midstates' financial advisor is Houlihan Lokey Capital, Inc. and its legal advisor is Latham & Watkins LLP.

### *The Proxy Statement Omits Material Information*

30. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

31. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

32. First, the Proxy Statement omits material information regarding the Company's and Midstates' financial projections.

33. With respect to the financial projections for Amplify, the Proxy Statement fails to disclose: (i) all line items used to calculate EBITDA; (ii) all line items used to calculate Adjusted EBITDAX; (iii) all line items used to calculate levered free cash flow; (iv) unlevered free cash flow and all underlying line items; and (v) a reconciliation of all non-GAAP to GAAP metrics.

34. With respect to the financial projections for Midstates, the Proxy Statement fails to disclose: (i) all line items used to calculate EBITDA; (ii) all line items used to calculate Adjusted EBITDAX; (iii) all line items used to calculate levered free cash flow; (iv) unlevered free cash flow and all underlying line items; and (v) a reconciliation of all non-GAAP to GAAP metrics.

35. The Proxy Statement also fails to disclose the financial projections for the combined company.

36. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

37. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, UBS Investment Bank ("UBS").

38. With respect to UBS's Selected Public Companies Analyses, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by UBS.

39. With respect to UBS's Selected Transactions Analyses, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by UBS.

40. With respect to UBS's Net Asset Valuation Analysis for Amplify, the Proxy Statement fails to disclose: (i) the cash flows used by UBS in the analysis and all underlying line items; (ii) the individual inputs and assumptions underlying the discount rates used by UBS; (iii) Amplify's net debt; and (iv) the value of plugging and abandonment obligations, the mark-to-market value of hedges, general and administrative expenses, and taxes.

41. With respect to UBS's Net Asset Valuation Analysis for Midstates, the Proxy Statement fails to disclose: (i) the cash flows used by UBS in the analysis and all underlying line items; (ii) the individual inputs and assumptions underlying the discount rates used by UBS; (iii) Midstates' net debt; and (iv) the value of hedges, general and administrative expenses, and taxes.

42. With respect to UBS's Contribution Analysis, the Proxy Statement fails to disclose: (i) estimated Adjusted EBITDA; and (ii) proved reserves for Amplify and Midstates.

43. With respect to UBS's Discounted Cash Flow Analysis - Amplify Standalone Analysis, the Proxy Statement fails to disclose: (i) unlevered free cash flow and all underlying line items; (ii) the terminal value of Amplify's PDP and selected PDNP reserves; (iii) UBS's basis for applying a range of multiples of 4.0x to 5.0x; (iv) the individual inputs and assumptions underlying the discount rates ranging from 10.0% to 12.0%; (v) cash and cash equivalents; and (vi) total debt, the value of plugging and abandonment obligations, and the mark-to-market value of hedges.

44. With respect to UBS's Discounted Cash Flow Analysis - Pro Forma Analyses, the Proxy Statement fails to disclose: (i) unlevered free cash flow and all underlying line items; (ii) the terminal value of the pro forma combined company's PDP and selected PDNP reserves; (iii) UBS's basis for applying a range of multiples of 4.0x to 5.0x; (iv) the synergies; and (v) the

individual inputs and assumptions underlying the discount rates ranging from 10.0% to 12.0%.

45. The Proxy Statement also fails to disclose a fair summary of any Discounted Cash Flow Analysis of Midstates.

46. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

47. Third, the Proxy Statement omits material information regarding potential conflicts of interest of UBS.

48. The Proxy Statement fails to disclose the amount of compensation UBS has received or will receive for serving as "a lender under Amplify's existing credit facilities."

49. The Proxy Statement further fails to disclose whether UBS has performed any other past services for Amplify, Midstates, or their affiliates, as well as the timing and nature of such services and the amount of compensation received by UBS for performing such services.

50. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

51. The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Recommendation of the Amplify Board and Reasons for the Merger; (iii) Certain Midstates Unaudited Prospective Financial and Operating Information; (iv) Certain Amplify Unaudited Prospective Financial and Operating Information; and (v) Opinion of Amplify's Financial Advisor.

52. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Amplify

53. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

54. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Amplify is liable as the issuer of these statements.

55. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

56. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

57. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in making a decision with respect to the Proposed Transaction, including whether to seek appraisal. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

58. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

59. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

60. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

61. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

62. The Individual Defendants acted as controlling persons of Amplify within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or Board members of Amplify and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

63. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

64. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved

in the making of the Proxy Statement.

65. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

66. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: July 16, 2019 **RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com